**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**McKINNLEY HERNANDEZ and**
**JOSEPH ROBINSON,**

     **Plaintiffs,**

**v.**                             **CASE NO.:**

**1st PRIORITY LAB SERVICES, LLC**
**d/b/a LABS ON THE GO,**

     **Defendant.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs McKinnley Hernandez ("Hernandez") and Joseph Robinson ("Robinson") (collectively, "Plaintiffs"), by and through undersigned counsel, sue Defendant 1st Priority Lab Services, LLC, d/b/a Labs on the Go ("Defendant"), and allege as follows:

## JURISDICTION AND VENUE

1. This is an action for damages for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Florida Minimum Wage Act ("FMWA"), Fla. Stat. § 448.110, and Florida common law for unpaid wages.

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.*

3. This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367 because those claims arise from the same

employment relationships, work, time records, and failures to pay as the FLSA claims.

4. Venue is proper in the Middle District of Florida because all of the events giving rise to these claims occurred in Pasco County, Florida.

## PARTIES

5. Hernandez is a resident of Pasco County, Florida who worked for Defendant in Pasco County, Florida.

6. Robinson is a resident of Hillsborough County, Florida who worked for Defendant in Pasco County, Florida.

7. Defendant is a Florida limited liability company with its principal place of business in Pasco County, Florida.

## GENERAL ALLEGATIONS

8. At all times material hereto, Plaintiffs were "engaged in the production of goods" for commerce within the meaning of Sections 6 and 7 of the FLSA, and as such was subject to the individual coverage of the FLSA.

9. At all times material hereto, Defendant was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

10. Defendant continues to be an "employer" within the meaning of the FLSA.

11. At all times material hereto, Defendant was and continues to be an enterprise covered by the FLSA, as defined under 29 U.S.C. §§ 203(r) and 203(s).

2

12.     Defendant hired, scheduled, directed, supervised, and paid caregivers and health aides who provided in-home care to Defendant's clients.

13.     Plaintiffs performed direct-care work that was integral to Defendant's business and was performed for Defendant's benefit.

14.     Plaintiffs performed domestic service in a private household within the meaning of 29 U.S.C. §§ 206(f) and 207(l) and 29 C.F.R. Part 552.

15.     Each Plaintiff performed more than eight hours of domestic service in the aggregate during the workweeks at issue and was therefore entitled to the FLSA's minimum-wage protections under 29 U.S.C. § 206(f).

16.     Plaintiffs were non-exempt hourly employees. They had no managerial authority, no power to hire or fire employees, no control over Defendant's business operations, and no duties that qualified them for an executive, administrative, or professional exemption.

17.     Hernandez was entitled to overtime compensation for hours worked over forty in a workweek under 29 U.S.C. §§ 207(a) and 207(l).

18.     Defendant was a third-party employer of direct-care workers and may not claim the companionship-services or live-in domestic-service exemptions for Plaintiffs under 29 C.F.R. § 552.109.

19.     Plaintiffs' FLSA claims are independently covered by the domestic-service provisions alleged above. Separately and in the alternative, and upon information and belief, Defendant also operated an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29

U.S.C. §§ 203(r) and 203(s). Defendant operated multiple service lines, including mobile laboratory, phlebotomy, staffing, and in-home care services; employed multiple workers; received insurance-related payments; and used goods, materials, medical supplies, banking systems, and electronic-payment platforms that moved in interstate commerce.

20. As a regular and recurring part of their employment, Plaintiffs used telephones and text messaging to receive assignments and report their time, and Defendant used Zelle and other electronic banking and payment systems to compensate them.

21. At all times relevant to this action, the annual gross sales volume of Defendant exceeded $500,000 per year.

22. Plaintiffs have satisfied all conditions precedent, or they have been waived.

23. Plaintiffs have hired the undersigned attorneys and agreed to pay them a fee.

24. Plaintiffs request a jury trial for all issues so triable.

## **FACTS**

25. Defendant assigned Plaintiffs to provide in-home direct-care services to an individual with paralysis in Zephyrhills, Florida.

26. Defendant remained responsible for employing and paying the caregivers regardless of whether Defendant had received reimbursement from an insurer or any other third party.

4

27. Plaintiffs did not receive their regular wages directly from the individual receiving care.

28. Rather, Defendant agreed to pay each Plaintiff $20.00 per hour in exchange for their work.

29. Defendant knew or had reason to know the hours Plaintiffs worked because Defendant assigned or approved their shifts, received their time reports, requested updated lists of unpaid hours, accepted hours submitted by text, made payments corresponding to their work, and repeatedly communicated with them about missing wages.

30. Defendant failed to make, keep, and preserve complete and accurate records of Plaintiffs' hours and wages, and failed to provide Plaintiffs with pay statements identifying gross wages, deductions, regular hours, overtime hours, or the pay periods covered.

31. Defendant paid wages sporadically, including through Zelle, and repeatedly attributed its payment failures to delayed insurance proceeds, workers' compensation insurance, financing problems, or the need to obtain a loan.

32. Defendant repeatedly acknowledged that wages remained due, requested hours after Plaintiffs complained, promised that payment was forthcoming, and nevertheless failed to pay.

33. Defendant did not maintain a reliable clock-in and clock-out system. Instead, Defendant permitted or required Plaintiffs to report their hours directly

to Defendant's owner, Janelle Washington ("Washington"), by text message or similar electronic communications.

34. Defendant's payment failures were not isolated. Defendant communicated with multiple caregivers about delayed or missing wages, further demonstrating that Defendant knew of its wage-payment obligations and chose not to satisfy them timely.

35. Defendant's conduct was willful and showed reckless disregard for the FLSA, FMWA, and Florida common law.

### *McKinnley Hernandez*

36. Hernandez began working for Defendant on or about January 31, 2025, and worked through on or about March 15, 2025.

37. Hernandez worked as a caregiver and certified nursing assistant, whose duties included helping the client with daily needs and transfers, emptying a catheter or Foley bag, providing personal care, protecting the client's safety, keeping the client engaged, and occasionally assisting with a wound vacuum or bowel program.

38. Defendant agreed to pay Hernandez $20.00 per hour and treated her as a W-2 employee.

39. Defendant did not provide Hernandez with a functioning timekeeping system.

40. Instead, Hernandez reported her hours by text, Defendant paid her through Zelle, and Defendant did not provide pay stubs or payroll records.

41. For the period from January 31 through February 8, 2025, Hernandez reported approximately 56 hours.

42. For the period from February 9 through February 22, 2025, Hernandez reported approximately 96 hours.

43. However, Defendant did not compensate her at an overtime premium for all hours worked in excess of forty hours for these time periods.

44. For the period from February 23 through March 8, 2025, Hernandez worked approximately 77 hours.

45. Defendant paid Hernandez nothing for this work.

46. At the agreed rate, those unpaid straight-time wages total approximately $1,540.00.

47. For the workweek from March 9 through March 15, 2025, Hernandez worked approximately 79 hours.

48. Defendant also paid Hernandez nothing for this work.

49. At the agreed rate, those unpaid straight-time wages total approximately $1,580.00.

50. The compensation that was unpaid for the hours that Hernandez worked constitutes "wages" under Florida common law, as well as under Fla. Stat. § 448.08.

51. Hernandez worked approximately 16 overtime hours during the period from January 31 through February 8, 2025.

52. Hernandez worked approximately 16 overtime hours during the period from February 9 through February 22, 2025.

53. Hernandez worked approximately 39 overtime hours during the workweek from March 9 through March 15, 2025.

54. Hernandez therefore worked approximately at least 71 overtime hours, for which she was not paid an overtime premium.

55. Based on her $20.00 regular rate and a $10.00 half-time premium, her presently estimated unpaid overtime premium is at least $710.00.

56. During the workweeks for which Defendant paid Hernandez nothing, her effective hourly wage was $0.00, below the federal minimum wage of $7.25 and the Florida minimum wage of $13.00 then in effect.

57. On or about March 15, 2025, Washington advised Hernandez and other employees through a GroupMe communication that payment would arrive soon and attributed the delay to workers' compensation insurance.

58. Washington later stated that checks were pending, but payment did not arrive.

59. On or about May 16, 2025, Defendant asked Hernandez to provide another list of the hours for which she remained unpaid.

60. Hernandez again provided the hours, but Defendant still did not pay her.

61. On or about June 23, 2025, Hernandez again contacted Washington and Washington stated that Defendant hoped to hear something soon, but Defendant did not pay Hernandez the remaining wages.

62. Defendant's knowledge of Hernandez's hours, repeated acknowledgment of the unpaid wages, request that she resubmit those hours, and continued failure to pay support a finding that the violations were willful.

### *Joseph Robinson*

63. Robinson began working for Defendant on or about May 9, 2025, and worked for Defendant through at least September 2025.

64. Robinson worked as a health aide or caregiver for an individual with paralysis.

65. Robinson generally worked four days per week, approximately 32 hours per week, and frequently worked overnight shifts from 11:00 p.m. to 7:00 a.m.

66. Defendant agreed to pay Robinson $20.00 per hour.

67. Robinson's duties required continuous monitoring and care. He was not completely relieved from duty during his shifts.

68. Defendant nevertheless deducted approximately one unpaid hour from each workday as a purported meal period, resulting in the loss of approximately four compensable hours per week.

69. Those periods were compensable because Robinson remained responsible for the client and was required to perform active or inactive duties while eating. They were not bona fide meal periods under 29 C.F.R. § 785.19.

70. Defendant did not consistently require use of a work-log application.

71. Instead, Defendant permitted Robinson to report his hours directly to Washington by text approximately every two weeks, and Washington accepted that method of reporting.

72. Defendant paid Robinson irregularly through Zelle, and did not provide pay stubs or identify the precise pay periods, gross wages, deductions, or hours covered by those payments.

73. Defendant originally missed multiple paychecks to Robinson, and although he was later paid two of the missed checks, Robinson remains unpaid for work performed in September 2025.

74. During the workweeks for which Defendant paid Robinson nothing, his effective hourly wage was $0.00, below the federal minimum wage of $7.25 and the Florida minimum wage of $13.00 per hour through September 29, 2025, and $14.00 per hour beginning September 30, 2025.

75. After accounting for Defendant's later payments and credits, Robinson's remaining unpaid September wages are presently estimated to be approximately at least $2,000.00.

76. This unpaid compensation that is owed to Robinson constitutes "wages" under Florida common law, as well as under Fla. Stat. § 448.08.

77. Moreover, Defendant also owes Robinson wages for the daily one-hour deductions during periods when he continued providing compensable care.

78. These unpaid deductions constitute "wages" under Florida common law, as well as under Fla. Stat. § 448.08.

79. Washington asked Robinson to identify the pay dates that were missing, confirming Defendant's awareness that wages remained unpaid.

80. Defendant repeatedly told Robinson that it was waiting for an insurance payment, trying to obtain financing or a loan, paying employees from personal funds, or otherwise waiting for another source of money.

81. These statements, Defendant's acceptance of Robinson's time reports, and its later partial payments demonstrate that Defendant knew Robinson had performed compensable work and that Defendant was responsible for paying him.

82. Defendant's knowledge of Robinson's hours, repeated acknowledgment of the unpaid wages, request that he resubmit those hours, and continued failure to pay support a finding that the violations were willful.

## COUNT I - FLSA MINIMUM-WAGE VIOLATIONS
### (Hernandez and Robinson)

83. Plaintiffs incorporate paragraphs 1 through 16, 18 through 45, 47 through 48, 56 through 74, 77, and 79 through 82, as though fully set forth herein.

84. The FLSA required Defendant to pay each Plaintiff at least $7.25 for every compensable hour worked in the affected workweeks.

85. Hernandez worked compensable hours during identified workweeks for which Defendant paid her no wages, resulting in an effective hourly rate of $0.00.

86. Robinson worked compensable hours in September 2025 for which Defendant failed to pay him, also resulting in an hourly rate of $0.00.

87. Defendant's failure to pay Plaintiffs at least the federal minimum wage violated 29 U.S.C. § 206.

88. Defendant's violations were willful within the meaning of 29 U.S.C. § 255(a).

89. As a direct result, Plaintiffs suffered damages in amounts to be proven at trial.

*WHEREFORE*, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant and award the following relief:

a) Judgment against Defendant for an amount equal to Plaintiffs' unpaid back wages at the applicable statutory minimum wage;

b) Judgment against Defendant, stating that Defendant's violations of the FLSA were willful;

c) An amount equal to Plaintiffs' minimum wage damages as liquidated damages;

d)    To the extent liquidated damages are not awarded, an award of prejudgment interest;

e)    A declaration that Defendant's practices as to Plaintiffs were unlawful, and a grant of equitable relief to Plaintiffs;

f)    All costs and attorney's fees incurred in prosecuting these claims; and

g)    For such further relief as this Court deems just and equitable.

## COUNT II - FLORIDA MINIMUM WAGE ACT VIOLATIONS
### (Hernandez and Robinson)

90.    Plaintiffs incorporate paragraphs 1 through 7, 12 through 13, 20, 22 through 45, 47 through 48, 56 through 74, 77, and 79 through 82, as though fully set forth herein.

91.    Plaintiffs were employees entitled to the Florida minimum wage under Article X, Section 24 of the Florida Constitution and Fla. Stat. § 448.110.

92.    On January 8, 2026, Plaintiffs provided Defendant written notice of their intent to bring FMWA claims. The notice identified the applicable minimum wages, the actual or estimated work dates and hours for which payment was sought, and the estimated unpaid wages through the date of notice.

93.    Defendant received an opportunity of at least 15 calendar days to pay the unpaid minimum wages or otherwise resolve the claims, but Defendant failed to fully cure the deficiencies.

94.    Plaintiffs' present claims are consistent with the work periods and wage deficiencies identified in the notice. The current estimates account for

13

payments and credits Defendant provided after the underlying wages first became due.

95. During Hernandez's affected workweeks, the Florida minimum wage was $13.00 per hour. During Robinson's September 2025 work, the Florida minimum wage was $13.00 per hour through September 29, 2025, and $14.00 per hour beginning September 30, 2025.

96. Defendant failed to pay Plaintiffs the applicable Florida minimum wage for all compensable hours, in violation of Fla. Stat. § 448.110 and Article X, Section 24 of the Florida Constitution.

97. As a direct result, Plaintiffs suffered damages in amounts to be proven at trial.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant and award the following relief:

a) A jury trial for all issues so triable;

b) That process issue and that this Court assert jurisdiction over these claims;

c) Judgment against Defendant for an amount equal to Plaintiffs' unpaid wages, computed at an hourly rate equal to the applicable State of Florida minimum wage;

d) Judgment against Defendant, stating that its violations of the FMWA were willful;

14

e) Liquidated damages in an amount equal to Plaintiffs' unpaid wages, computed at an hourly rate equal to the applicable State of Florida minimum wage;

f) To the extent that liquidated damages are not awarded, an award of prejudgment interest;

g) A declaration that Defendant's practices as to Plaintiffs were unlawful, and a grant of equitable relief to Plaintiffs;

h) All costs and attorneys' fees incurred in prosecuting these claims; and

i) For such further relief as this Court deems just and equitable.

### COUNT III - FLSA OVERTIME VIOLATIONS
### (McKinnley Hernandez Only)

98. Hernandez incorporates paragraphs 1 through 2, 4 through 48, 51 through 55, and 57 through 62, as though fully set forth herein.

99. Hernandez worked hours in excess of 40 in one or more workweeks while employed by Defendant.

100. Hernandez worked approximately at least 71 overtime hours for which Defendant did not pay the required overtime premium.

101. Hernandez's regular rate was $20.00 per hour. Her presently estimated unpaid overtime premium is at least $710.00, calculated as 71 overtime hours multiplied by the $10.00 half-time premium.

15

102. Defendant's failure to pay Hernandez overtime compensation violated 29 U.S.C. §§ 207(a) and 207(l).

103. Defendant's violation was willful within the meaning of 29 U.S.C. § 255(a).

104. As a direct result, Hernandez suffered damages in amounts to be proven at trial.

**WHEREFORE**, Hernandez respectfully requests that the Court enter judgment in her favor and against Defendant and award the following relief:

a) Judgment against Defendant for an amount equal to Plaintiff's unpaid back wages at the applicable overtime rate;

b) Judgment against Defendant, stating that Defendant's violations of the FLSA were willful;

c) An amount equal to Plaintiff's overtime damages as liquidated damages;

d) To the extent liquidated damages are not awarded, an award of prejudgment interest;

e) A declaratory judgment stating that Defendant's practices as to Plaintiffs were unlawful, and a grant of equitable relief to Plaintiff;

f) All costs and attorney's fees incurred in prosecuting these claims; and

g) For such further relief as this Court deems just and equitable.

16

## COUNT IV - UNPAID WAGES UNDER FLORIDA COMMON LAW
### (Hernandez and Robinson)

105.   Plaintiffs incorporate paragraphs 1 through 7, 12 through 13, 20, 22 through 42, 44 through 50, 57 through 73, and 75 through 82, as though fully set forth herein.

106.   During the statutory period, Plaintiffs worked for Defendant, and Defendant agreed to pay Plaintiffs for Plaintiffs' services.

107.   Defendant failed to pay Plaintiffs all "wages" owed to Plaintiffs, including the unpaid wages of twenty dollars ($20.00) per hour for each Plaintiff's work.

108.   As a result of the foregoing, Plaintiffs have suffered damages.

*WHEREFORE*, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant and award the following relief:

a)   A jury trial on all issues so triable;

b)   That process issue, and that this Court take jurisdiction over the case;

c)   Judgment against Defendant for an amount equal to Plaintiffs' unpaid back wages;

d)   All costs and attorney's fees incurred in prosecuting these claims, in accordance with Fla. Stat. § 448.08; and

e)   For such further relief as this Court deems just.

### JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

17

Dated this 12th day of August, 2026.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar No. 37061
**HANNAH E. DEBELLA**
Florida Bar No. 1026002
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Avenue, Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Direct No.: 813-337-7992
Facsimile No.: 813-229-8712
Email: bhill@wfclaw.com
Email: hdebella@wfclaw.com
Email: aketelsen@wfclaw.com
**Attorneys for Plaintiffs**